AMERICAN STEEL CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 8368. Promulgated July 13, 1927.

1. The cash value of promissory notes paid in to a Pennsylvania corporation for stock held to constitute invested capital.

2. Invested capital should not be reduced by the amount of an alleged tax for a prior year which tax the Board held did not exist.

3. Affiliation status granted for certain periods.

4. Where two corporations are affiliated for a portion of 1918 and for 1919 and 1920, and a net loss is sustained by the group for 1919, no part of such net loss may be carried forward to 1920, under the provisions of section 204, Revenue Act of 1918, where the net income of the group for the fractional period in 1918 is in excess of the net loss of the group for 1919.

*J. W. Drye, Esq.,* for the petitioner.
*George G. Witter, Esq.,* for the respondent.

The Commissioner determined a deficiency in income and profits tax for 1920 in the amount of $46,296.55. The notice of deficiency showed an overassessment for 1919, which year will be considered in so far as necessary to a determination of the deficiency for 1920.

The questions involved are (1) whether certain promissory notes paid in for stock on June 1, 1918, constituted invested capital for the year 1920; (2) whether invested capital for 1920 should be reduced by the amount of a deficiency for the year 1918 which the Board heretofore held did not exist; (3) whether the petitioner and the American Cotter Pin Co. were affiliated; and (4) whether the affiliated group is entitled to apply a net loss for the year 1919 against its income for 1920.

By agreement between the parties, the American Cotter Pin Co. was made a party to this proceeding.

FINDINGS OF FACT.

The American Steel Co. (hereinafter referred to as the Steel Company), is a Pennsylvania corporation with its principal office and place of business at Pittsburgh.

The facts relating to the first issue, namely, whether promissory notes in the amount of $1,367,953.02 paid in for stock on June 1, 1918, constituted invested capital of the American Steel Co. for the year 1920 have heretofore been considered by the Board and are fully set forth in the findings of fact in the *Appeal of American Steel Co.*, 1 B. T. A. 839. The facts found by the Board in that appeal with reference to this issue are made a part of these findings of fact as fully as if set forth in detail herein. The conditions existing in 1920 with reference to these promissory notes were identical with those existing in 1918.

The American Cotter Pin Co. (hereinafter referred to as the Cotter Pin Co.), since dissolved, was, in 1920, a Pennsylvania corporation which had been in existence under the laws of Pennsylvania since 1913. Its sole business was the manufacture of cotter pins. Its original issue of capital stock was 500 shares of the par value of $100 each. No change was made in the stock issued and outstanding until July 8, 1918, when 500 additional shares were issued, the authorized capital having been increased in the meantime from $50,000 to $250,000, all shares being of one class and having a par value of $100 each. On September 16, 1918, 500 additional shares were issued, making the total shares issued and outstanding 1,500, which condition remained throughout 1920.

The following table shows the stockholders of record from January 1, 1918, to December 31, 1920:

|  | M. B. Kelly | J. P. Kelly | R. A. Whiteside | American Steel Co | J. A. McCrory | Total |
|---|---|---|---|---|---|---|
| Jan. 1, 1918 | 14 | 1 | 237 | 248 | 0 | 500 |
| July 8, 1918 | 713 | 50 | 237 | 0 | 0 | 1,000 |
| Sept. 16, 1918 | 1,181 | 82 | 237 | 0 | 0 | 1,500 |
| Aug. 15, 1919 | 1 | 82 | 237 | 1,179 | 1 | 1,500 |
| Sept. 3, 1919 | 1 | 1 | 237 | 1,260 | 1 | 1,500 |
| June 16, 1920 | 1 | 1 | 0 | 1,497 | 1 | 1,500 |
| Dec. 31, 1920 | 1 | 1 | 0 | 1,497 | 1 | 1,500 |

The 237 shares transferred of record from R. A. Whiteside to the Steel Company on June 16, 1920, were actually acquired from R. A. Whiteside on March 22, 1920. There were no further changes in the ownership of the stock from June 16, 1920, to December 31, 1920.

The common stock holdings of the Steel Company were as follows:

|  | Jan. 1, 1918 | Jan. 1, 1919 | Jan. 1, 1920 |
|---|---|---|---|
| M. B. Kelly | 6,527 | 13,994 | 14,094 |
| J. P. Kelly | 467 | 1,000 | 900 |
| J. A. McCrory | 1 | 1 | 1 |
| M. R. Kelly | 5 | 5 | 5 |
|  | 7,000 | 15,000 | 15,000 |

No change occurred in the stockholdings of the Steel Company throughout 1920. J. P. Kelly is a brother of M. B. Kelly and J. A. McCrory was an employee of both companies. R. A. Whiteside, who held stock in the Cotter Pin Co., was the inventor of a cotter-pin patent and the stock which was issued to him was issued for this patent. He was not an officer in either company, though prior to 1920 he devoted a part of his time to the sales end of the Cotter Pin Co., and in the beginning furnished the customers for cotter pins. The operation and management of both companies were dominated by M. B. Kelly.

The officers of the Steel Company and the Cotter Pin Co. from January 1, 1919, to December 31, 1920, were as follows:

American Steel Co.:
  M. B. Kelly, president.
  J. P. Kelly, treasurer.
  J. A. McCrory, secretary.

American Cotter Pin Co.:
  M. B. Kelly, president.
  J. P. Kelly, treasurer.
  J. A. McCrory, secretary.

The Steel Company manufactured wire and wire products. Its purpose and that of its officers in organizing the Cotter Pin Co. and acquiring control of its stock was to add a by-product to the products manufactured by the Steel Company. It was contemplated that this by-product would increase the output of the Steel Company, aid it in the development and extension of its business, create a greater tonnage, and reduce its overhead.

From the outset, the business of the Cotter Pin Co. was not profitable. From time to time the Steel Company advanced it money and in a large way financed its operations. The additional issues of stock of the Cotter Pin Co. in 1918 from 500 to 1,500 shares were to take up loans made by the Steel Company, or its stockholders, to the Cotter Pin Co.

Both companies were conducted as a single business or enterprise from the same office in the Park Building, Pittsburgh, Pa. The office routine was handled by the same office force and sales were made through the same channels. The products of both companies were manufactured in Ellwood City, Pa. In the beginning, cotter pins were manufactured in the tool room of the Steel Company and the work was done by the Steel Company's employees. Later on, the cotter pin manufacture was moved to a building adjacent to the buildings occupied by the Steel Company, but in the same plant. The

building in which the cotter pins were manufactured was owned at all times, however, by M. B. Kelly or the Steel Company. The Cotter Pin Co. at no time had title to it. Many of the plant employees exercised the same duties with respect to both companies. The salaries of office and plant employees serving both companies were arbitrarily apportioned between the two companies.

The Cotter Pin Co. purchased from the Steel Company as much of the wire used in the manufacture of cotter pins as the Steel Company could furnish. Purchases from outside parties were only made when the demand could not be supplied by the Steel Company. In 1919, these purchases from the Steel Company amounted to 47 per cent of the total purchases made by the Cotter Pin Company, and in 1920, 97 per cent.

The Cotter Pin Co. suffered operating losses as follows:

| | |
|---|---|
| 1918 | $5, 336. 63 |
| 1919 | 49, 858. 52 |
| 1920 from January 1 to March 22 | 6, 156. 85 |

The taxable income of the Steel Company for 1918, 1919, and 1920 was as follows, the operations of the Cotter Pin Co. being included therein from March 22, 1920, to December 31, 1920:

| | |
|---|---|
| 1918 | $262, 312. 79 |
| 1919 | 27, 281. 64 |
| 1920 | 284, 340. 59 |

## OPINION.

LITTLETON: The errors assigned in the petition are as follows:

(1) The failure of the Commissioner to allow as a part of invested capital for 1920, promissory notes paid in for stock on June 1, 1918, in the amount of $1,367,953.02.

(2) The action of the Commissioner in reducing invested capital for 1920 by the amount of the deficiency in tax of the petitioner for 1918 which was disallowed by the Board for that year, but which decision has not been acquiesced in by the Commissioner.

(3) The failure of the Commissioner to recognize an affiliated status of the American Steel Co. and the American Cotter Pin Co. for 1919 and 1920.

(4) The failure of the Commissioner to give effect to the net loss of the aforementioned companies on an affiliated basis for 1919 in determining their taxable income for 1920.

(5) The failure of the Commissioner to allow a loss of $2,600 in 1920 on account of scrapping an engine in that year and also a loss in the same year on account of dismantling certain annealing furnaces.

At the hearing, the petitioner withdrew its assignments of error set out in subdivision (5) above.

The point at issue with respect to the inclusion in invested capital in 1920 of notes paid in for stock in 1918 is identical with that considered by the Board in the case of this petitioner for 1918.

*Appeal of American Steel Co.*, 1 B. T. A. 839. The petitioner submitted in evidence in this proceeding the findings of fact of the Board in the aforementioned proceeding, and also the evidence as disclosed by the record in the prior proceeding with respect to this point. Evidence was further submitted to show that the conditions existing in 1920 were identical with those existing in 1918 with respect to these notes. No evidence was presented by the Commissioner on this point. *Parish-Watson & Co.*, 4 B. T. A. 605; *Union Metal Manufacturing Co.*, 4 B. T. A. 287; *Goodell-Pratt Co.*, 6 B. T. A. 1235.

The Board heretofore decided in the *Appeal of American Steel Co.*, *supra*, that the promissory notes paid in for stock on June 1, 1918, had an actual cash value at that time of $1,367,935.02 and constituted invested capital in that amount from the date paid in. During the year 1920, these promissory notes were assets of the corporation in a like amount and should, therefore, be included in invested capital for the year 1920 at their face value.

As to the second question, we find that the Commissioner is seeking to reduce invested capital of the petitioner in 1920 by the deficiency which the Board disallowed in 1918. Since we have held that such a deficiency does not exist, it would be erroneous to allow the reduction of invested capital on account thereof. The contention of the petitioner with respect to this issue is, therefore, sustained.

The third issue relates to the affiliated status of the Steel Company and the Cotter Pin Co. for 1920. Since the succeeding issue involves the application of the net loss provisions of section 204 of the Revenue Act of 1918, and since the determination of the amount of the net loss deductible for 1920 involves a consideration of 1918 and 1919 for both companies, it becomes necessary to take jurisdiction of these years for the sole purpose of determining the amount of the net loss deductible by the Steel Company in 1920. The authority for thus taking jurisdiction is conferred by section 274 (g) of the Revenue Act of 1926, which reads as follows:

The Board in redetermining a deficiency in respect of any taxable year shall consider such facts with relation to the taxes for other taxable years as may be necessary correctly to redetermine the amount of such deficiency, but in so doing shall have no jurisdiction to determine whether or not the tax for any other taxable year has been overpaid or underpaid.

The first question to be considered is whether the two companies were affiliated under the provisions of section 240 (b) of the Revenue Act of 1918, which reads as follows:

For the purpose of this section two or more domestic corporations shall be deemed to be affiliated (1) if one corporation owns directly or controls through closely affiliated interests or by a nominee or nominees substantially all the

stock of the other or others, or (2) if substantially all the stock of two or more corporations is owned or controlled by the same interests.

An examination of the evidence with respect to stockholders shows that on September 16, 1918, M. B. Kelly held 1,181 shares and J. P. Kelly, 82 shares out of a total of 1,500, or approximately 84 per cent, and that the remainder was held by Whiteside. This situation continued, substantially, until August 15, 1919, and September 3, 1919, when on these respective dates the stock of M. B. Kelly and J. P. Kelly was transferred to the Steel Company, except in each instance for one qualifying share. On March 22, 1920, all of Whiteside's stock was acquired by the Steel Company, which thus became practically the 100 per cent owner of the stock of the Cotter Pin Co., and so remained at least until December 31, 1920.

We are convinced from the evidence that M. B. Kelly and J. P. Kelly, his brother, who were practically 100 per cent owners of the Steel Company, were acting as nominees of the Steel Company in holding the stock of the Cotter Pin Co. This company was formed for the purpose of being an integral part of the Steel Company and to add a by-product to the products manufactured by the Steel Company. While it was ostensibly a separate corporation, it was operated as a branch of the Steel Company.

From the beginning the Cotter Pin Co. was fostered by the Steel Company and its principal stockholder, M. B. Kelly. The business of both companies was conducted from the same general office. The office routine was handled by the same force and sales were made through the same channels. The products of both companies were manufactured in the same general plant, and the buildings occupied by the Cotter Pin Co. were owned by the Steel Company and M. B. Kelly, the principal stockholder of the Steel Company. The principal officers of the two companies were identical, and at no time did Whiteside, the owner of the minority interest prior to March 22, 1920, hold an executive office in either company. In many respects employees in one plant performed similar duties in the other plant and salaries were arbitrarily allocated between the two companies.

In fact, the very existence of the Cotter Pin Co. was dependent on the Steel Company. Since the former company did not prove profitable the latter company advanced money to meet the operating needs of the former. This money was not repaid except through the issuance of additional stock by the Cotter Pin Co., which stock was of doubtful value. Had Whiteside opposed the Steel Company in its policies, he would have lost everything, since the Cotter Pin Co. had lost money from the beginning and its indebtedness to the Steel Company made it dependent on the Steel Company.

The extent of domination exercised and the oneness of the two companies is shown by the testimony of M. B. Kelly in these words:

I was doing everything for the American Steel Co. You see I owned the American Steel Co. practically, and I owned the Cotter Pin, practically, and these were matters of record, but I was the boss of the whole shooting match. I did everything I wanted to, and I told these fellows how to vote.

In view of the foregoing circumstances, the Board is of the opinion that from September 16, 1918, the conditions contemplated by the statute for affiliation have been met and the two companies should be ruled affiliated from that date to December 31, 1920.

In the *Appeal of Mahoning Coal R. R. Co.*, 4 B. T. A. 923, the Board said:

Control need not be legal control, but community of interest may, if recognized and acted upon, constitute sufficient basis to determine the question of control.

\*      \*      \*      \*      \*      \*      \*

If the statute means that affiliation results from a condition of stock ownership and control, such as enables one person, or one group of persons, to control practically all the voting stock, whether that control arises from actual ownership, or such community of interest as to place practically all of the voting stock subject to disposal in stockholders' meetings by that single dominating unit, we believe the conditions contemplated by the statute have been met.

Likewise in the *Appeal of Brandeis Investment Co.*, 3 B. T. A. 1086—

The entire circumstances disclosed by the record show that the realty company was the child of the store company, conceived for its purposes, developed for its convenience, and dominated by its necessities. While it is true that there are stockholders in the investment company who hold no stock in the store company, yet the store company and its closely knit stockholders own over 80 per cent of the stock in the investment company, and three other stockholders, who are dependent for their income on the earnings of the store company, own over 6 per cent.

The final question is whether the petitioner is entitled to a deduction in 1920 under the provisions of section 204(b), Revenue Act of 1918, which is as follows:

If for any taxable year beginning after October 31, 1918, and ending prior to January 1, 1920, it appears upon the production of evidence satisfactory to the Commissioner that any taxpayer has sustained a net loss, the amount of such net loss shall under regulations prescribed by the Commissioner with the approval of the Secretary be deducted from the net income of the taxpayer for the preceding taxable year; and the taxes imposed by this title and by Title III for such preceding taxable year shall be redetermined accordingly. Any amount found to be due to the taxpayer upon the basis of such redetermination shall be credited or refunded to the taxpayer in accordance with the provisions of section 252. If such net loss is in excess of the net income for such preceding taxable year, the amount of such excess shall under regulations prescribed by the Commissioner with the approval of the Secretary be allowed as a deduction in computing the net income for the succeeding taxable year.

We have heretofore held in this decision that the Steel Company and the Cotter Pin Co. were affiliated for 1919 and a portion of 1918. The income must, therefore, be determined on a consolidated basis in so far as the companies were affiliated, and when the companies are so considered there is disclosed a net loss for the consolidated group for 1919 of $22,576.88.

The statute provides that this net loss shall first be applied against the preceding taxable year—here 1918. In this instance, the two companies were in existence for the whole of 1918, but we have held that they were affiliated from September 16, 1918. Therefore, under the principle laid down in the *Appeal of American La Dentelle, Inc.,* 1 B. T. A. 575, a consolidated return should have been filed by the two companies from this date until December 31, 1918.

The income of the Steel Company for 1918 was $262,312.79, and the Cotter Pin Co. suffered a loss for 1918 of $5,336.63. By considering that the income and loss accrued ratably over the year 1918, and there is no evidence to the contrary, we find an income on a consolidated basis from September 16, 1918, to December 31, 1918, of approximately $75,176.73, or an amount in excess of the net loss previously determined for the calendar year 1919 on a consolidated basis.

The Board is of the opinion that a proper application of the net loss provisions to the situation here in question is first to apply the entire net loss to the income of the consolidated group for the period for which the two companies are held to have been affiliated in 1918, viz., September 16, 1918, to December 31, 1918. Since the net income for this period is in excess of the net loss for the group in 1919, there is no net loss to be otherwise disposed of, and, consequently, no net loss to be considered as a deduction for the group in 1920. *Appeal of Norfolk Knitting Mills Corporation,* 5 B. T. A. 792.

Reviewed by the Board.

> *Judgment will be entered on 10 days' notice, under Rule 50.*